IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CITY OF ASHDOWN, ARKANSAS,
Individually and on behalf of all others
similarly situated                                                                                      PLAINTIFF

v.                                         Case No. 4:20-cv-4113

NETFLIX, INC. and HULU, LLC                                                              DEFENDANTS

## ORDER

Before the Court is a Motion to Dismiss filed by Separate Defendant Hulu, LLC ("Hulu"). ECF No. 18. Plaintiff has filed a response. ECF No. 42. Hulu has filed a reply. ECF No. 46. Also before the Court is a Motion to Dismiss filed by Separate Defendant Netflix, Inc. ("Netflix"). ECF No. 23. Plaintiff has filed a response. ECF No. 43. Netflix has filed a reply (ECF No. 45) and two Notices of Supplemental Authorities. ECF Nos. 90, 95. The Court finds both motions ripe for consideration. For the reasons discussed below, the Court finds that both Motions to Dismiss (ECF Nos. 18, 23) should be granted.

### I. BACKGROUND

Plaintiff, the City of Ashdown, Arkansas, brings this class action lawsuit[1] against Netflix and Hulu (collectively "Defendants") alleging that Defendants, as "video service providers," have failed to pay franchise fees to various Arkansas municipalities in violation of the Arkansas Video Service Act, codified at Ark. Code Ann. § 23-19-201 through § 23-19-210.

**A. Arkansas Video Service Act**

In 2013, the Arkansas Legislature passed the Video Service Act ("VSA"), which established

---

[1] Ashdown purports to bring claims on behalf of "[a]ll Arkansas municipalities in which one or more of the Defendants has provided video service." ECF No. 2, ¶ 25.

a statewide franchise[2] scheme for entities seeking to provide video services and to construct and operate equipment and facilities in public rights-of-way to transmit video services. The VSA allows video service providers to avoid the need to negotiate separate authorization from every political subdivision served by their networks. *See* S.B. 101, 89th Gen. Assemb., Reg. Sess. (Ark. 2013) ("this act establishes uniform regulation of video service providers and a simplified process for the issuance of a state franchise that will encourage entry of new video service providers to the state marketplace.").

An entity may elect to apply for a certificate of franchise authority with the Secretary of State. Ark. Code Ann. § 23-19-203(a)(1)(C). Once the application is submitted, the Secretary of State must notify the applicant within thirty days whether the application needs additional information or is deemed complete. Ark. Code Ann. § 23-19-203(d)(1). The Secretary of State must issue a certificate of franchise authority within fifteen days after the application is complete. Ark. Code Ann. § 23-19-203(d)(2).

A political subdivision must allow the holder of a certificate of franchise the "authority to install, construct, and maintain facilities in the public rights-of-way in its jurisdiction." Ark. Code Ann. § 23-19-205(b). In exchange for this right, a holder must pay municipalities in which it offers its services a "video service provider fee" not "in excess of five percent (5%) of the gross revenue," which may be passed through and paid by subscribers. Ark. Code Ann. §§ 23-19-206(a)(3)(B)(ii), (b), (e), (k).

The state-issued certificate of franchise authority is not mandatory. The VSA allows a video service provider the following options: (1) seek a state-issued franchise; (2) or elect to "[n]egotiate a

---

[2] "Franchise" means an "authorization . . . issued by a franchising authority . . . which authorizes the construction or operation of a cable system." Ark. Code Ann. § 23-19-202(5)(A)(i) (referring to 47 U.S.C. § 522, as it existed on January 1, 2013). "Franchise also means any agreement between a video service provider and a political subdivision under which a video service provider is authorized or otherwise permitted to provide video service in the political subdivision." *Id.*

franchise with a political subdivision" directly; (3) or "[a]dopt the terms and conditions of an existing franchise issued by a political subdivision to an incumbent video service provider." Ark. Code Ann. § 23-19-203(a)(1)(B). The VSA leaves the decision among these option to the provider.

The VSA specifically exempts from the statutory scheme "video programming . . . [p]rovided as part of and via a service that enables end users to access content, information, electronic mail, or other services offered over the public Internet." Ark. Code Ann. § 23-19-202(15)(B).

### B. Defendants

Hulu is a streaming service offering live and on-demand television and film to subscribers, including subscribers in Ashdown. Netflix is a streaming service offering on-demand video content, but it does not provide live programming. Neither Hulu nor Netflix has a certificate of franchise authority or a franchise with Ashdown. To deliver its services, Defendants distribute video content to internet-connected devices, including computers, mobile devices, video game consoles, and internet-connected televisions. Subscribers use their own internet connections—whether it be through internet providers, cell phone providers, or something else—to stream Defendants' video content. Typically, subscribers use broadband internet connections, such as DSL or fiber optic cable to receive Defendants' video content. These broadband internet connections rely upon wireline facilities located at least in part in the public right(s) of way. Because Defendants transmit video content through the subscribers' existing infrastructure to connect to the internet, Defendants do not install, construct, or maintain their own facilities in the public rights-of-way. Essentially, Defendants transmit video content through existing facilities controlled and operated by third parties, which Defendants have no control over.

### B. Plaintiff's Claims

In its complaint, Plaintiff asserts that the VSA, specifically Ark Code Ann. § 23-19-206,

requires Defendants to pay each municipality in which they provide video service a franchise fee of five percent of their gross revenues derived from its operations in that municipality. Plaintiff alleges that because Defendants have not paid Plaintiff the required five percent of revenues, they are in violation of Ark. Code Ann. § 23-19-206.[3] Defendants argue that this claim is wrong as a matter of law and should be dismissed.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must provide "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept as true all factual allegations set forth in the complaint and must draw all reasonable inferences in the plaintiff's favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (cleaned up). In other words, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

---

[3] Plaintiff also seeks declaratory relief asking the Court to define Defendants' obligations under the VSA and to declare that Defendants have failed to comply with the VSA.

In considering a motion to dismiss under Rule 12(b)(6), "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to present evidence in support of the claim. *See Nusku v. Williams*, 490 U.S. 319, 327 (1989).

### III. DISCUSSION

Defendants make numerous arguments as to why this action should be dismissed. Because the Court finds two of these arguments dispositive, the Court declines to resolve Defendant's other arguments. First, the Court will set forth the legal standard for statutory construction. Then, the Court will address the two dispositive arguments.

Federal courts apply state rules of statutory construction when interpreting state statutes. *Behlmann v. Century Sur. Co.*, 794 F.3d 960, 963 (8th Cir. 2015). Because this matter appears to present a matter of first impression in Arkansas, the Court must predict, as best it can, how the Arkansas Supreme Court would decide it. *See Sloan v. Motorists Mut. Ins. Co.*, 368 F.3d 853, 856 (8th Cir. 2004). The Arkansas Supreme Court explains its rules of construction:

> The primary rule of statutory interpretation is to give effect to the intent of the legislature. We first construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. In conducting this review, we will reconcile statutory provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. Furthermore, we will not read into a statute language that was not included by the legislature.

*Ark. Dep't of Corr. v. Shults*, 2018 Ark. 94, at *4-5, 541 S.W.3d 410 (2018) (internal citations omitted).

### A. Public Internet Exclusion

The VSA provides that a "video service provider offering video service in a political subdivision under a certificate of franchise authority shall pay to the political subdivision where it

Case 4:20-cv-04113-SOH   Document 96   Filed 09/30/21   Page 6 of 9 PageID #: 690

provides video service a video service provider fee as may be required by the political subdivision . . . ." Ark. Code Ann. § 23-19-206(b).  In other words, a video service provider offering "video service" under a "certificate of franchise authority" must pay a video service provider fee.  *Id.*  The VSA's definition of "video service" expressly excludes video programming "provided as part of and via a service that enables end users to access content, information, electronic mail, or other services offered over the public Internet."  Ark. Code Ann. § 23-19-202(15)(B)(ii).

Defendants assert that their video programming falls within this public internet exclusion. Plaintiff argues that the exclusion does not apply to Defendants because:  (1) they do not provide video content "as part of . . . a service" because their video content is the "entirety" of their service (ECF No. 42, p. 15); and (2) Defendants' services are not "offered over the public Internet" because the services are offered only to paying subscribers.  ECF No. 42, p. 16.  The Court agrees with the arguments advanced by Defendants.

Plaintiff states in its complaint that Defendants offer "online streaming of live video programming and a library of films and television programs" delivered "through the Internet to the subscriber's Internet-connected device.  ECF No. 2, ¶¶ 11-13.  Thus, Defendants provide video programming "as part of and via a service that enables end users to access content . . . offered over the public Internet."  *See* Ark. Code Ann. § 23-19-202(15)(B).  Plaintiff's reading of the statute is that the exclusion only applies to video service providers who provide multiple services, including video service, but does not apply when video is the entirety of the service.  This interpretation reads too much into the statute.  A plain and sensible reading of the statute reveals that the exclusion applies to any video programming provided as part of a service.  Video programming is a part of a service that both Defendants provide, regardless of whether Defendants provide multiple services or just one service.

6

Now the Court must determine whether Defendants' services are "offered over the public Internet." *See* Ark. Code Ann. § 23-19-202(15)(B)(ii). Plaintiff argues that Defendants' services are not offered over the public internet because the services are only offered to paying subscribers who need login credentials to access content from Defendants' private servers. Defendants' counter that the question is not whether their video services are public but whether they are provided over the public internet. The Court finds the analogy offered by Hulu on point: whether a driver locks the car doors while driving does not affect whether the road taken is a public road. ECF No. 46, p. 8. Similarly, whether Defendants restrict access to their video service does not affect whether the delivery method is the public internet. Accordingly, the Court finds that Defendants' services are offered over the public internet.

In conclusion, the Court finds that Defendants' video programming[4] falls within the public internet exclusion under Ark. Code Ann. § 23-19-202(15)(B)(ii). Thus, Defendants do not offer video services as defined by the VSA and are not required to pay a video service provider fee.

### B. Right of Action

Even if the public internet exception found at Ark. Code Ann. § 23-19-202(1)(B)(ii) does not apply to Defendants' services, the Court agrees with Defendants that the VSA does not authorize Plaintiff to bring this action.

Plaintiff argues that the VSA expressly authorizes Arkansas municipalities to bring this action to clarity and enforce its rights under the VSA. In support of its argument, Plaintiff relies on a subsection of the VSA, which states:

> [T]his subchapter shall not be interpreted to prevent a video service provider, a political subdivision, or a franchising entity from entering into a negotiated franchise agreement with a political subdivision or seeking clarification of its

---

[4] The Court notes that Netflix does not concede that its on-demand service is "video programming." *See* ECF No. 24, p. 19). However, the Court is only assuming Netflix offers "video programming" for the purpose of this analysis. The Court makes no decision as to whether Netflix's on-demand service is considered "video programming" under the VSA.

>rights and obligations under federal or state law or to exercise a right or authority under federal or state law.

Ark. Code Ann. § 23-19-210(b). Section 23-19-210 is entitled "Applicability of other laws." Reading this title in context with the plain language in § 23-19-210(b) reveals that the provision merely states that any existing rights of action found in other laws are not taken away. There is no language in the provision that expressly authorizes a municipality such as Plaintiff to bring this action.

Plaintiff also cites to Ark. Code Ann. § 23-19-207 to support its argument that the VSA authorizes Plaintiff to bring this action because it "contemplates that non-compliance will be determined and remedied by a court." ECF No. 42, p. 18. The Court disagrees. Section § 23-19-207 is entitled "Prohibited activity—Remedies for noncompliance." A complete reading of this section reveals that it prohibits specific conduct and then states the remedies for noncompliance. Specifically, it states that a video service provider shall not deny access to video service to any group of potential residential subscribers based on their income. Ark. Code Ann. § 23-19-207(a). Then, it states that if a court of competent jurisdiction finds that the holder of a certificate of franchise authority is not in compliance, the court shall order the holder of the certificate to cure the noncompliance within a reasonable time. Ark. Code Ann. § 23-19-207. There is no language in this subchapter that expressly authorizes a municipality such as Plaintiff to bring this action. The Court finds that nothing in the VSA expressly authorizes Plaintiff to bring this section.

The Court moves now to Plaintiff's argument that the VSA implies that Plaintiff has a right to bring this action. Arkansas courts will imply private rights of action when: (1) the "legislature explicitly expressed [such] an intent; (2) the plaintiff is part of a "special class protected by the statute; and (3) a private right of action would not "circumvent the clear intent of the statut[e]." *Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 2012 Ark. 157, *18-19, 400 S.W.3d 701, 712 (2012).

The Arkansas legislature has not expressed any intent that individual municipalities are the

8

ones who should ensure compliance with the VSA. Instead, it appears that the Arkansas legislature intended for the Arkansas Public Service Commission to ensure compliance. Section 23-1-104 states that the "commission shall have the right, and it is made its duty, to file suit against any person or corporation in any court of competent jurisdiction . . . to compel compliance with the provision of this act or any order of the commission or, by injunction proceedings, to prevent violations of this act or any order of the commission." Ark. Code Ann. § 23-1-104. In sum, to imply that the VSA gives Plaintiff a right of action would undermine the clear intent of the statute.

Further, the VSA was not enacted for the benefit of individual municipalities but instead to "encourage entry of new video service providers to the state marketplace." S.B. 101, 89th Gen. Assemb., Reg. Sess. (Ark. 2013). The Arkansas Legislature passed the VSA to establish "uniform regulation of video service providers and a simplified process for the issuance of a state franchise." *Id*. There is no language in the VSA that suggests it was enacted to protect municipalities. Thus, the Court cannot find that the VSA authorizes Plaintiff to bring this action.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motions to Dismiss (ECF Nos. 18, 23) is **GRANTED**, and all claims against Defendants are **DISMISSED**.

**IT IS SO ORDERED**, this 30th day of September, 2021.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

9